1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JOSE LUIS VELAZQUEZ and
JEANETTE VELAZQUEZ,

        Plaintiffs,

v.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., et
al.,

        Defendants.

2:11-CV-576 JCM (CWH)

**ORDER**

Presently before the court is defendants Aurora Loan Services LLC. *et al.*'s motion for summary judgment (doc. # 80).[1] Plaintiffs Jose and Jeanette Velazquez have filed an opposition (doc. # 87), and defendants replied (doc. # 91). Also before the court is plaintiffs' counter motion for summary judgment (doc. # 83). Defendants have filed an opposition (doc. # 89),[2] and plaintiffs have replied (doc. # 93).

**I.    Factual background**

The property at issue is located at 5613 Bridgehampton Avenue, Las Vegas, Nevada 89130. (Doc. # 8, ¶ 1). On February 1, 2005, plaintiffs executed a $200,000 note, secured by a deed of trust

---

[1] Defendant Quality Loan Service Corp. joined defendants' Aurora Loan Services, *et al.*'s motion for summary judgment (doc. # 82), and defendant Aegis Wholesale Corporation was dismissed without prejudice based on plaintiffs' failure to show proof of service (doc. # 101). Thus, all defendants are party to this motion for summary judgment.

[2] Quality Loan Service also joined defendants' Aurora Loan Services, *et al.*'s opposition to plaintiffs' counter motion for summary judgment (doc. # 89). (*See* doc. # 90).

James C. Mahan
U.S. District Judge

1  on the subject property, to refinance existing loans. (Doc. # 80, Ex. 4, ¶ 3). On February 1, 2009,
2  plaintiffs defaulted on the loan. (Doc. #80, Ex. 4, ¶ 6). A notice of breach and default was recorded
3  on May 11, 2009. *Id*.

4       Plaintiffs made contact with defendants asking for possible arrangements to cure the default
5  and arrearages that had accumulated on their defaulted loan. (Doc. # 80, Ex. 4, ¶ 7). Defendants
6  provided plaintiffs with two repayment agreements in 2009, both of which were breached by
7  November 2009. (Doc. # 80, Ex. 4. ¶¶ 7-8). Defendants also reviewed plaintiffs' multiple requests
8  for a loan modification, but plaintiffs did not qualify for the Federal Home Affordable Mortgage
9  Program (HAMP). (Doc. # 80, Ex. 4, ¶ 9). A notice of sale was recorded on March 11, 2011, because
10  the loan remained in default. (Doc. # 80, Ex. 4, ¶ 19).

11       Plaintiffs filed this action on March 17, 2011, and a temporary restraining order was issued
12  on April 29, 2011. (Doc. # 11). Plaintiffs filed an amended complaint and obtained a preliminary
13  injunction on May 25, 2011, preventing the completion of the pending foreclosure. (Doc. # 35). Both
14  plaintiffs and defendants have filed motions for summary judgment. (Docs. # 80 and # 83).

15  **II.   Legal standard**

16       Summary judgment is appropriate when, viewing the facts in the light most favorable to the
17  nonmoving party, there is no genuine issue of material fact which would preclude summary
18  judgment as a matter of law. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996); FED. R. CIV. P.
19  56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *T.W. Elec.*
20  *Serv., Inc. v. Pacific Elec. Contractors Assn*., 809 F.2d 626, 630 (9th Cir. 1987). The purpose of
21  summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is
22  a genuine need for trial." *Matsushita Elec*., 475 U.S. at 586; *International Union of Bricklayers v.*
23  *Martin Jaska, Inc*., 752 F.2d 1401, 1405 (9th Cir. 1985).

24       The moving party bears the burden of informing the court of the basis for its motion, together
25  with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v.*
26  *Catrett*, 477 U.S. 317, 323 (1986); *see also Orr v. Bank of America*, 285 F.3d 764 (9th Cir. 2002)
27  (expressing the standard for authentication of evidence on a motion for summary judgment). Once
28

**James C. Mahan**
**U.S. District Judge**

1   the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party

2   fails to present, by affidavits, depositions, answer to interrogatories, or admissions on file, "specific

3   facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324; FED. R. CIV.

4   P. 56(c).

5   **III.   Discussion**

6         Plaintiffs' amended complaint alleges seven causes of action: (1) wrongful foreclosure, (2)

7   declaratory relief, (3) violation of NRS § 107.080, (4) unjust enrichment/promissory estoppel, (5)

8   interference with contractual relationship, (6) slander of title, and (7) injunction. (Doc. # 8).

9         *A.      Wrongful foreclosure*

10        Plaintiffs allege in their amended complaint that there was "no breach of condition or failure

11   of performance existing on Plaintiffs' part" that would have allowed defendants to foreclose. (Doc.

12   # 8, ¶ 31).

13        Defendants argue that the notice of default recorded on May 11, 2009, stated that the loan

14   had been in default since February 2009. (Doc. # 80, 9:9-10).  Plaintiffs confirmed that they had

15   defaulted on their loan during their deposition in October 2011.  (Doc. # 80, 9:11-12) *citing* (Doc.

16   # 89, Ex.1, 47).

17        An action for the tort of wrongful foreclosure cannot stand if the borrower is unable to prove

18   that "at the time the foreclosure occurred, no breach of condition or failure of performance existed

19   on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of

20   power of sale." *Collins v. Union Federal Sav. & Loans Ass'n.*, 662 P.2d 610, 623 (Nev. 1983).

21   Furthermore, Nevada only recognizes the tort of wrongful foreclosure when a homeowner alleges

22   that a lender wrongfully foreclosed upon the property when the mortgagor was not in default on the

23   loan. *See Pimental v. Countrywide Home Loans, Inc.*, 2011 WL 2619093 at *2 (D. Nev. 2011).

24        At this time, the property in question has not been subject to foreclosure. *Collins* requires that

25   in order to have a valid claim for wrongful foreclosure, the foreclosure must have occurred already.

26   Here, plaintiffs have received multiple notices of trustee sale, but the actual sale has been postponed

27   and has yet to happen. Therefore, there can be no claim for wrongful foreclosure.

28

**James C. Mahan**
**U.S. District Judge**

B.     *Remedial claims*

Plaintiffs' claims for declaratory and injunctive relief are not causes of action, but are remedies based on claims stated in the original complaint. *See In re Wal-Mart Wage & Hour Employment Practices Litig.*, 490 F.Supp.2d 1091, 1130 (D. Nev. 2007) (holding that a claim for injunctive relief is not a separate cause of action); *Stock West, Inc. v. Confederated Tribes of Coville Reservations*, 873 F.2d. 1221, 1225 (9th Cir. 1989) (holding that declaratory judgment does not create substantive cause of action). Injunctive relief is only granted if the moving party can prove that there is an urgent need to protect its rights. *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984). Furthermore, the moving party must "demonstrate that there exists a significant threat of irreparable injury." *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir. 1985).

In this case, plaintiffs have asked the court for declaratory and injunctive relief because they believe defendants are unlawfully attempting to foreclose on their property. These "claims" are not viable claims but are requests for relief. Thus, the court need not address these "claims" independent from the causes of action upon which the relief is based.

C.     *Violation of NRS § 107.080* et. seq.

Plaintiffs allege that defendants violated NRS § 107.080 pursuant to Assembly Bills ("AB") 284 and 273 because the notice of default and election to sell did not "describe the deficiency in performance or payment." (Doc. # 8, ¶¶ 39, 41). Further, plaintiffs allege that defendants did not attach a copy of the promissory note to the notice of trustee's sale when served to plaintiffs, therefore violating NRS § 107.085. (Doc. # 8, ¶¶ 41, 42).[3]

Defendants argue that notice of default and election to sell were issued in full compliance with NRS § 107.080(b) and (c) that were in effect at the time of the commencement of foreclosure

---

[3] AB 284 requires all assignments of a deed of trust to be recorded. Assemb. B. 284 § 9, 76th Leg., Reg. Sess. (Nev.2011). AB 284's amendments to the NRS Chapters 106 and 107, however, did not become effective until October 1, 2011, in light of AB 273. AB 273 amended the effective date of AB 284 to October 1, 2011 and amended § 14.5 of AB 284 to provide that the amendments to NRS § 107.080 would apply only to notices of default filed on or after October 1, 2011. *See* Assemb. B. 273 § 5.9, 76th Leg., Reg. Sess. (Nev. 2011); *see also Butcher v. Mortgage Elec. Registration Sys., Inc.*, 2012 WL 37790670 at *2 (D. Nev. Aug. 31, 2012).

1    in May 2009. (Doc. # 80, 11:8-9).

2            Nevada law upholds non-judicial foreclosures when notices substantially comply with the

3    statutory requirements. NRS § 107.080(5)(a). Further, foreclosures are routinely upheld where there

4    are immaterial irregularities and there is no prejudice to a borrower in default outside of the loss of

5    the property. *See Matter of Stanfield*, 6 B.R. 265 (Bk.Ct. D.Nev. 1980). The amendments to NRS

6    § 107.080, will only apply to notices of default filed on or after October 1, 2011. *See Lane v. Wells*

7    *Fargo Bank, N.A.*, 2012 WL 1687105 at *2 (D. Nev. May 14, 2012).

8            In this case, the default occurred in February 2009 and the notice of sale was issued in March

9    2011. NRS § 107.080 *et. seq.* pursuant to AB 284 and 273 came into effect on October 1, 2011, and

10   does not retroactively govern any notices recorded prior to the amendment. Before the statute's

11   amendment, it was not required that a copy of the promissory note be attached to the notice of sale;

12   (*see* AB 284), however, a copy was provided to plaintiffs at their depositions on October 27, 2011,

13   which plaintiffs acknowledged and did not dispute (doc. # 89, Ex. 1, 25:25-31:21; doc # 89, Ex. 2,

14   6:24-7:7). Furthermore, the notice of default sent to plaintiffs described the deficiency in

15   performance, amounts due for late charges, and directions to cure the default. (*See* doc. #17, Ex. 4).

16   The notice substantially complied with the version of NRS § 107.080 in effect at the time of default.

17   Thus, defendants are not in violation of this statute.

18           D.      *Unjust enrichment and promissory estoppel*

19           Plaintiffs allege that defendants made promises to plaintiffs regarding a loan modification

20   and instructed plaintiffs to stop making their monthly payments. (Doc. # 8, ¶ 46). Plaintiffs state that

21   they entered into an agreement with defendants to pay $930.00 per month from May 2009 until

22   October 2009 as a "trial period" before a loan modification could be completed. (Doc. # 8, ¶ 46).

23   Plaintiffs allege that the money they paid unjustly enriched defendants because they were not entitled

24   to the payments made. (Doc. # 8, ¶ 47).

25           Defendants argue that the agreement to pay $930.00 per month was toward arrearages already

26   due on the loan and were part of a forbearance agreement that plaintiffs failed to fully perform. (Doc.

27   # 80, 29:1-2). Defendants further contend that there was never a promise to modify the loan; instead,

28

James C. Mahan
U.S. District Judge

1   a loan modification was discussed but plaintiffs failed to meet the criteria for the HAMP. (Doc. #
2   80, 27:19-25).

3          Unjust enrichment occurs when a person has and retains a benefit which belongs to another.
4   *Nevada Indus. Development, Inc. v. Benedetti*, 103 Nev. 360, 363 (Nev. 1987). An action for unjust
5   enrichment cannot stand if there is a written contract such as a deed of trust.  *See Vega v. CTX*
6   *Mortgage Co., LLC*, 2011 WL 192514 at *4 (D. Nev. Jan. 19, 2011) (holding that a claim for unjust
7   enrichment cannot lie where there is an applicable contract). Negotiations for a possible loan
8   modification do not amount to a contract enforceable under the statute of frauds. *Id.*

9          Here, there was no unjust enrichment because at the time plaintiffs made the $930.00
10   payments, they had already defaulted on their loan and owed arrearages to defendants. (Doc. # 80,
11   Ex. 4, ¶ 7). Similarly, there cannot be an action for unjust enrichment in this case because the claim
12   is premised on a written contract to repay a $200,000 loan. *See Leasepartners Corp.  v. Robert L.*
13   *Brooks Trust Dated November 12, 1975*, 942 P.2d 182, 187 (1997) ("An action based on a theory
14   of unjust enrichment is not available when there is an express, written contract, because no
15   agreement can be implied when there is an express agreement."). Further, courts have held that a
16   promise to negotiate is not a promise to modify. *See Vega*, 2011 WL 192514 at *4. Therefore,
17   plaintiffs cannot claim promissory estoppel for attempting to modify their loan.

18          E.    *Interference with contractual relationship*

19          Plaintiffs allege that defendants "committed intentional acts intended to or designed to
20   disrupt plaintiffs' contractual relationship with defendants." (Doc. # 8, ¶ 54). Plaintiffs state that
21   defendants did this by transferring or assigning interest in the note, attempting to foreclose on the
22   interest in the deed of trust, promising a loan modification, and unlawfully accepting plaintiffs'
23   payments. *Id.*

24          Defendants argue that there is no evidence of an interruption or interference in the contract.
25   (Doc. # 80, 30:11). Defendants contend that all parties that allegedly interfered with the contact were
26   in fact rightful beneficiaries, transferees, assignors, or trustees. (Doc. # 80, 30:20-25). Defendants
27   state that plaintiffs provided no information regarding the alleged interference and even

28

**James C. Mahan**
**U.S. District Judge**

1   acknowledged at their depositions the proper transfer and ongoing right by defendants to enforce the

2   loan. (Doc. # 80, 31:4-20); (doc. 89, Ex.1, 22-23, 34-35, 86-87). Defendants further argue that they

3   "have standing and ongoing entitlement as holder, beneficiary, servicer, and trustee to enforce the

4   loan contract and exercise power of sale on the defaulted loan" (Doc. # 80, 31:22-25).

5          A party is, as a matter of law, incapable of interfering with its own interests in a contract. *See*

6   *Klein v. Freedom Strategic Partners, LLC*, 595 F.Supp.2d 1152, 1153 (D. Nev. 2009); *see also*

7   *Blank v. Hager*, 360 F.Supp.2d 1137, 1154 (D. Nev. 2005); *see also Bartas Realty, Inc. v. Nash*, 81

8   Nev. 325, 402 P.2d 650, 651 (1965). In this case, all defendants are a party to the loan contract, and,

9   therefore, cannot interfere with the contract.

10         *F.     Slander of title*

11         Plaintiffs argue that defendants recorded a notice of default and election to sell without legal

12  or actual authority. (Doc. # 8, ¶ 58). Plaintiffs further allege that even though defendants knew that

13  the notice of default was "statutorily defective," defendants nevertheless filed it. (Doc. # 8, ¶ 59).

14  Plaintiffs also contend that although defendants knew plaintiffs did not owe any money on the note,

15  defendants still accepted plaintiffs' payments. (Doc. # 8, ¶ 61). Plaintiffs allege that defendants'

16  actions constitute false and malicious communications causing damages to plaintiffs. (Doc. # 8, ¶¶

17  61-64).

18         Defendants argue that plaintiffs' claim for slander of title is based on the allegation that

19  defendants recorded the notice of default and election to sell without any authority, but evidence

20  proves that the notice was properly issued. (Doc. # 80, 32:26). Defendants further contend that the

21  notice was based on reasonable grounds (*i.e.* the plaintiffs default on the loan) and was therefore not

22  false, malicious, or reckless. (Doc. # 80, 33:16-19). Defendants state that the notice was issued

23  pursuant to section 10 of the deed of trust and in substantial compliance with the version of NRS §

24  107.080 in effect at the time. (Doc. # 80, 33:13-15).

25         "A plaintiff alleging a claim for slander of title must meet a heightened pleading standard."

26  *See Bonner v. Specialized Loan Servicing*, 2011 WL 1199998 at *4 (D. Nev. Mar. 28, 2011). A

27  claim for slander requires: (1) a false and malicious publication or communication; (2) disparaging

28

James C. Mahan
U.S. District Judge

- 7 -

1  one's title in land; (3) causation; and (4) special damages. *Higgins v. Higgins*, 103 Nev. 443, 444

2  (Nev. 1987). Malice requires that defendant knew that the statement was false or acted in reckless

3  disregard of its truth or falsity. *See Rowland v. Lepire*, 99 Nev. 308, 313 (Nev. 1983).

4       Here, plaintiffs provided no evidence that the notice was maliciously filed. In fact, during a

5  deposition, plaintiffs stated they had no knowledge of reckless conduct. (Doc. # 89, Ex. 1, 88).

6  Plaintiffs admitted they had defaulted on their loan and had not cured the arrearages accrued.

7  Plaintiffs' default precludes a finding that the notice of default or election to sell was either false or

8  malicious. *See Rowland*, 99 Nev. at 313. Therefore, the grounds for recording the notice of default

9  and election to sell were reasonable and warranted.

**IV.   Conclusion**

11       Accordingly,

12       IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiffs, Louis and

13  Jeanette Velazquez's motion for summary judgment (doc. # 83) be, and the same hereby is,

14  DENIED.

15       IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants, Aurora Loan

16  Services LLC. *et al.*'s motion for summary judgment (doc. # 80) be, and the same hereby is,

17  GRANTED.

18       DATED October 23, 2012.

**UNITED STATES DISTRICT JUDGE**

James C. Mahan
U.S. District Judge

- 8 -